## PRESIDENT, DIRECTORS AND COMPANY OF THE GROCERS' BANK *vs.* PLINY E. KINGMAN & others.

A cashier's bond voluntarily executed, and containing nothing contrary to law, is not invalid, because the condition varies from the form required by the Rev. Sts. c. 36, § 27.

The sureties on a cashier's bond are not entitled to notice of the cashier's resignation, or of his default, nor need any demand be made upon them, before action brought on the bond.

Under the *St.* of 1852, *c.* 312, § 3, sureties on a bond, severally but not jointly liable, may be joined as defendants in one action on the bond.

The sureties on a cashier's bond, in which they undertake to save the bank harmless from every loss that may arise from the cashier's mistakes, as well as from losses arising from his fraud, inattention or negligence in the performance of his duties, are exonerated, by an increase of the capital stock of the bank after the making of the bond, from liability for acts of the cashier after the additional capital has been paid in.

The conveyance by a cashier to the bank of his property to cover certain known defalcations of his does not entitle the sureties on his bond to have that property applied in discharge of their liability for an embezzlement which was not known to the bank at the time of the conveyance.

ACTION OF CONTRACT upon the bond given by Kingman, as cashier of the plaintiffs' bank, as principal, and the other defendants in various sums as sureties. Trial before *Hoar*, J., who reported the case for the consideration of the full court. The facts are stated in the opinion.

*H. F. Durant & H. Jewell*, for the plaintiffs.

*C. B. Goodrich & A. H. Fiske*, for the defendants.

METCALF, J. It is objected to the maintenance of any action in this case, that the bond in suit is invalid, because it varies in the condition thereof from the form required by the Rev. Sts. *c.* 36, § 27. But as the bond was voluntarily executed, and nothing in the condition thereof is contrary to law, it must be held to be valid. Cases cited in *Sweetser* v. *Hay,* 2 Gray, 49. *Franklin Bank* v. *Cooper,* 36 Maine, 179.

It was also originally objected to the maintenance of this action against the sureties of the cashier, that no notice of his resignation or default was given to them, nor any demand made upon them, before action brought. But at the argument the defendants' counsel admitted that these objections could not be sustained, and they were properly withdrawn.

It is further objected that this action is not rightly brought against the defendants jointly, because by the terms of the bond in suit their obligations are several and not joint. We are of opinion that this objection cannot prevail. The third section of the practice act (*St.* 1852, *c.* 312) provides that " persons severally liable upon contracts in writing may all or any of them be joined in the same action." It is argued however by the defendants' counsel, that this provision is applicable to

those cases only in which all the several contractors are liable to the whole extent of the contract, so that the same judgment can be rendered against all of them. We do not think so, for by the same section " the court shall take such orders for the separate trial of the issues, if any, as shall be found most convenient, and shall enter several judgments according to the several contracts of the defendants, and issue one or more executions thereon as the case may require." In *Fuller* v. *Morse,* 4 Gray, 295, it was said by the court that the sole purpose of this section was to facilitate proceedings against parties severally liable on the same contract, and permit their rights to be determined under one process, instead of compelling a party seeking redress to resort to several actions.

The statute which continued the plaintiffs a banking company beyond the time (October 1st 1851) limited in their original charter was passed on the 2d of May 1849, and the bond in suit was made on the 20th of June 1850. The decisions, therefore, which were cited by the defendants' counsel, ( *Union Bank* v. *Ridgely,* 1 Har. & Gill, 433, and *Thompson* v. *Young,* 2 Ohio, 334,) that a cashier's bond given to a bank whose duration is limited to a certain time does not render the obligors liable for the misconduct of the cashier after that time, are not applicable to the present case.

Another ground of defence taken by the sureties on the bond in suit is, that by the increase of the capital of the bank, after the making of the bond, they were thenceforth exonerated from liability for the misconduct of the cashier. And we are of opinion that they were thereby exonerated from liability for any breach by the cashier of the condition of the bond subsequently to the increase of the capital.

It is an established rule of law that a party to a contract like that of these defendants shall not be bound beyond the extent of the engagement which appears from the terms of the contract and the nature of the transaction to have been in his contemplation at the time of entering into it, and that his liability cannot, without his consent, be extended or enlarged either by the obligee or by operation of law. Fell on Guaranties, 91.

1 Parsons on Con. book 3, *c.* 8, § 5. *Miller* v. *Stewart*, 9 Wheat. 702 *& seq. Boston Hat Manufactory* v. *Messinger*, 2 Pick. 234. Thus, a bond given as security for a collector of customs was held not to extend to a new duty laid on certain articles after the bond was given ; and it was decided that the collector's sureties were not liable for his default in not paying the duties received by him on those articles. *Bartlett* v. *Attorney General*, Parker, 277, and *Bowdage* v. *Attorney General*, Parker, 278. So where one executed a bond as surety of an agent of a corporation, conditioned that he should duly account for all moneys received by him for the corporation, and the condition recited that the agent was appointed for the purpose of selling coal at a yearly salary of £ 100, and the corporation and agent afterwards agreed to substitute for such salary a commission of sixpence per ton on all coal for which he should obtain orders, it was decided that the surety was not liable for the default of the agent after the change of his remuneration. *Northwestern Railway Co.* v. *Whinray*, 10 Exch. 77. In that case, Baron Alderson said : " A person may be willing to be surety for another if the latter has a fixed salary, but not if the salary is fluctuating." " When the mode of remuneration was altered, the agency was different, and the risk of the sureties was materially increased." pp. 81, 82. According to another report of that case, Baron Platt said : " The change imposed on the surety a risk which he never undertook to bear. The surety's bargain was, that the clerk should have the salary, the more certainly to be able to resist temptation." 32 L. J. (Exch.) 264 ; 26 Eng. Law & Eq. 493. See also *Bamford* v. *Iles*, 3 Exch. 380, and *Bonar* v. *Macdonald*, 3 H. L. Cas. 226.

In the case at bar, the capital of the Grocers' Bank, when the bond in suit was executed, was $ 300,000. It was afterwards increased, first to $ 500,000, and then to $ 750,000. The risk of the sureties was thereby very greatly enhanced, especially as they undertook to save the bank harmless from every loss that might arise from the cashier's mistakes, as well as loss arising from his fraud, inattention or negligence in the perform-

ance of his duties. Our judgment therefore is, that the sureties ceased to be liable on their bond for any misconduct or mistake of the cashier committed by him after any part of the increased capital was paid into the bank. And we are brought to this conclusion, notwithstanding a decision to the contrary by the superior court of Delaware, in the case *Bank of Wilmington & Brandywine* v. *Wollaston,* 3 Harringt. 90. In that case, however, the surety did not undertake to be answerable for losses caused by the cashier's mistakes. One effect of this decision is, that the sureties are not liable for any of the sums embezzled by the cashier, except the sum of $4,000; all the other sums having been embezzled by him after the proper certificate of the actual payment of additional capital (as required by *St.* 1853, *c.* 211, § 4) had been returned into the office of the secretary of the Commonwealth. Another effect of the decision is, to render immaterial the question whether the statements and admissions of the cashier were competent evidence against his sureties of the embezzlements for which they are not answerable.

For the $4,000 embezzled on the 5th of May 1853, before the paying in of any new capital, the sureties are liable — their bond being then in force, and the embezzlement being fully proved by other evidence than the cashier's statements and admissions — unless they are relieved from that liability by his conveyance to the bank of property exceeding $20,000 in value. It is argued for the sureties that this property should be first applied to the payment of the $4,000; the embezzlement of that sum being the first breach of the condition of the bond. But inasmuch as that embezzlement was not known to the bank when that conveyance was made, and the purpose of the conveyance was to cover, as far as it would, the known defalcations of the cashier, we are of opinion that the sureties are not entitled to have that property applied in discharge of their liability. The property was neither conveyed nor received for that purpose.

The plaintiffs are to have execution for four thousand dollars, and interest thereon from the 5th of May 1853.

*Judgment for the plaintiffs.*